IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROSE MARIE MATHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 08-6374-KI |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | OPINION AND ORDER |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

KING, District Judge:

## **INTRODUCTION**

Plaintiff Rose Marie Mather brings this action for judicial review of a final decision of the
Commissioner of Social Security denying her application for disability insurance benefits (DIB)
under Title II of the Social Security Act.  This court has jurisdiction under 42 U.S.C. § 405(g).  The
Commissioner's decision is affirmed and the case dismissed.

## BACKGROUND

Mather was fifty-four years old at the time of the administrative hearing. Tr. 21[1]. She completed high school and had some college classes. *Id*. Mather has worked as a clerk, cashier, receptionist and motel/RV park manager. Tr. 116. Mather filed an application for DIB on May 1, 2006, and her application was denied initially and on reconsideration. An administrative hearing was held on January 17, 2008. The Administrative Law Judge (ALJ) issued a decision on September 10, 2008. She found Mather satisfied the insured status requirements for a claim under Title II through September 30, 2009, and must establish that she was disabled on or before that date to prevail on her DIB claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ found Mather was not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step two, the Commissioner determines

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

whether the claimant has a medically severe impairment or combination of impairments.  An impairment is severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R.  § 404.1521.  The burden to show a medically determinable severe impairment is on the claimant.  *Bowen v. Yuckert*, 482 U.S. at 146.  Although the ALJ found Mather has the medically severe impairment of Fibromyalgia, she alleges the ALJ improperly determined her mental impairments were not severe.

At step three, there is a conclusive presumption that the claimant is disabled if the Commissioner determines that the claimant's impairments meet the duration requirement and meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Id.* at 141; 20 C.F.R. § 404.1520(d).  The criteria for these listed impairments are enumerated in 20 C.F.R. Pt. 404, subpt. P, app. 1 (Listing of Impairments).  If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545, Social Security Ruling (SSR) 96-8p. Mather challenges the ALJ's determination of her RFC.

At step four, the Commissioner must determine whether the claimant retains the RFC to perform work she has done in the past.  If the ALJ determines that she retains the ability to perform her past work, the Commissioner will find the claimant not disabled.  20 C.F.R. § 404.1520(f). Mather challenges the ALJ's determination she was able to perform her past relevant work.

### THE ALJ's FINDINGS

The ALJ found Mather has had no substantial gainful employment (SGA) since April 11, 2005, the alleged onset date of her disability. Tr. 12. She determined Mather has the severe impairment of Fibromyalgia. *Id.* However, the ALJ determined Mather's medical impairments of depression and anxiety were not severe. Tr. 13-14. The ALJ determined that Mather's condition did not meet or equal the criteria for a listed impairment enumerated in 20 C.F.R. Pt. 404, subpt. P, app. 1 (Listing of Impairments). Tr. 14. She found Mather retained the RFC to perform light work with the additional restrictions of avoidance of concentrated exposure to work hazards such as heights and repetitive, high impact activities. Her RFC also requires avoidance of long periods of inactivity, some type of mental stimulation if sitting more than one hour at a time, and some variety to her activities. Tr. 14-15. The ALJ determined Mather could return to her past relevant work as a clerk/cashier and was not disabled within the meaning of the Social Security Act. Tr. 16.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.*,

359 F.3d at 1193.  The Commissioner's decision must be upheld, even if the "evidence is susceptible

to more than one rational interpretation."  *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## DISCUSSION

Mather asserts the case should be remanded so her counsel can review the medical records

of Dr. Casey, a physician who treated Mather in 2003, prior to the alleged onset date of disability.

The ALJ refers to Dr. Casey's medical records in her opinion, but they are not part of the

administrative record.  Mather also asserts the ALJ erred in finding she does not have severe

impairments of depression and anxiety.  Mather contends the ALJ failed to properly assess her

credibility.  The Commissioner responds that any errors committed by the ALJ are harmless and his

opinion was based on substantial evidence in the record.

## I.    Medical Background

Mather was examined by Dr. Martin at the South Coast Psychiatric Clinic on January 22,

2002.  Tr. 155-159.  Mather had a stressful incident at work and upon returning home, received no

support from her husband.  She cried until her husband took her to the emergency room, where she

was given Trazodone.  Dr. Martin diagnosed adjustment reaction with mixed emotional features,

moderately severe, with a Global Assessment of Functioning (GAF) of 55[2].  He recommended

---

[2]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to
determine the individual's overall functioning. A GAF of 41 to 50 indicates "serious symptoms
(suicidal ideation, severe obsessional rituals frequent shoplifting) OR any serious impairment in
social occupational, or school functioning (e.g., few friends, unable to keep a job)."  A GAF of
51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic
attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends,
conflicts with peers or co-workers)."   A GAF of  61-70 indicates "mild symptoms (e.g.
depressed mood and mild insomnia) OR some difficulty in social, occupational or school
functioning, but generally functioning pretty well, has some meaningful interpersonal
relationships."  The American Psychiatric Association, Diagnostic and Statistical Manual of
Mental Disorders, 34 (4th ed. 2000).

increasing her dosage of Zoloft.  Mather was seen at the Waterfall Clinic on November 5, 2002, because she had stopped taking Zoloft and she was given a change in medication.  Tr. 291-292.  She was seen again at the Waterfall Clinic on December 18, 2002.  Tr.  286-287.  It was noted that Mather had a borderline sleep apnea study but she failed to follow up on it.  The notes indicate Mather complained of emotional stress with crying and she was given a change in her medication.

Mather was seen at the Community Counseling Center between December 23, 2003 and March 19, 2004.  Tr.  172-225.  A thirty day termination letter was sent to Mather on February 23, 2004, for failure to come to an appointment or follow up.  Tr.  173.  Mather was treated for depression and was assigned GAFs ranging from 42-76, during this time.  Tr.  177, 213.  She was prescribed Prozac and Geodon.  Tr. 179.  On March 10, 2004, Mather was prescribed medication for depression at the Reedsport Clinic and advised to comply with her thyroid medication.  Tr.  300. Mather visited the emergency room on May 1, 2004, complaining of weakness and episodic somnolence.  Tr.  227-237.  However, Mather had apparently taken some medications by mistake which likely caused the symptoms.  Tr.  230.  On a follow up visit to the Reedsport Clinic on May 14, 2004, it was noted that Mather did not appear overly depressed, but due to her oral history and lack of medical records, her medications were continued.  Tr.  300-301.

On August 6, 2005, Mather was seen at the Waterfall Clinic for medication follow up and given prescriptions for Zoloft, Lexapro, Estradiol and Restoril.  Tr.  280.  Mather returned to the Waterfall Clinic on May 17, 2006, because she had been out of medications for three or four months and was feeling depressed.  Tr.  277-278.  Her prescriptions were renewed and she was started on Premarin.  Mather was examined by Dr. Nolan, a state agency consultant on June 17, 2006.  Tr. 238-240.  He found her exam consistent with a diagnosis of Fibromyalgia, noting she may also have a

possible left medial epicondylitis.  Tr. 240.  Dr. Nolan noted her history of depression and believed her possible sleep apnea could cause some of her depressive symptoms.  He noted her work should be restricted with regard to heights or balancing and she should avoid high impact activities or prolonged inactivity.  Dr. Nolan also noted a limitation of lifting twenty pounds and that she needed appropriate mental stimuli if sitting for long periods.  *Id.*

Mather visited the Waterfall Clinic on June 21, 2006, and it was noted she was taking her medications and "feeling pretty good."  Tr. 275.  She visited the Waterfall Clinic again on August 8, 2006, and the medical notes indicate that Lexapro and Zoloft were working well for her depression, Tramadol was working quite well for her Fibromyalgia, and that she was feeling better on Premarin.  Tr. 272.  Mather visited the Waterfall Clinic again on October 30, 2006, for a medication review.  Tr. 328-331.  She received a prescription for Restril for insomnia and the benefits of psychotherapy were discussed with her.  On July 9, 2007, Mather returned to the Waterfall Clinic for a medication review.  Tr. 326-327.  She complained of not sleeping much and appeared depressed.  Mather was given prescriptions for Premarin, Tomazepan, and Paxil.

Mather returned to the Waterfall Clinic on August 28, 2007, complaining of snoring, pain in the bottom of her feet and neuropathy.  Tr. 324-325.  She was given prescriptions for Lunesta, Tomazepan, and a Lyrica trial.  Mather went to the Waterfall Clinic on December 4, 2007, following a family disagreement.  Tr. 336-337.  She complained of more pain from her Fibromyalgia, headaches, low energy and trouble doing daily activities.  Her medications were updated and changed.  *Id.*  Mather's husband took her to the emergency room on March 28, 2008, when she "did not want to get out of bed."  Tr. 339-340.  The medical notes indicated Mather had been stable on medications for years but she let her prescriptions run out.  A clinical appointment was

recommended and Mather was given prescriptions with instructions on the importance of not allowing her medication to lapse.

II.    **Administrative Record**

When a claimant appeals the final decision of the Commissioner, the Commissioner is required to file a "certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). The certified copy of the administrative record does not include any records from Dr. Casey, a physician who treated Mather prior to the date of her alleged disability. The failure to include Dr. Casey's records in the administrative record is error. The error in this instance is harmless error. The ALJ cites medical records from Dr. Casey from March 27, 2003, to November 20, 2003. Tr. 12, 13. Mather does not articulate how these records would benefit her, but contends the extent of the record is unknown. Although the plaintiff asserts that the extent of Dr. Casey's records is unknown, Mather completed a medical history noting her first visit to Dr. Casey was is 2003 and her last was in 2004. Tr. 134.

Mather filed a previous disability claim which was denied in May, 2004. Tr. 68, 83. She did not appeal this decision. Mather is precluded from now asserting disability during the "period covered by the earlier decision." *Green v. Heckler*, 803 F.2d 528, 530 (1986)(citations omitted). Mather also reports working full time beginning February, 2004, which makes the period of Dr. Casey's treatment of little relevance to the current disability claim.

The ALJ noted that Mather saw Dr. Casey for neck, back, and shoulder pain, and complained of depression and anxiety. Tr. 13. The ALJ found a note from Dr. Casey, dated July 1, 2003, stating Mather was totally and permanently disabled, was not supported by the record. *Id.* She noted Dr. Casey's treatment notes only covered seven months of 2003, did not give an explanation of his

conclusion of disability, and the notes frequently stated Mather was "doing better."  *Id.*  Mather reported working full time from February, 2004 to April, 2005, which was after Dr. Casey's disability note was written.  Tr.  16, 116, 122-123.

The ALJ's discussion of Dr. Casey's record is brief and primarily in the context of Mather's long history of depression, which began before the alleged onset date of April, 2005.  Tr. 13. Medical records that "predate the alleged date of onset of disability are of limited relevance." *Carmickle v. Commissioner of Soc. Sec. Admin.,* 533 F.3d  1155, 1165 (9th Cir. 2008)(citations omitted).   Although the ALJ discussed the early records, there is no indication these records were relied upon by the ALJ in her decision.  Errors that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless.  *Stout v. Commissioner, Social Security Administration,* 454 F. 3d 1050, 1055 (9th Cir. 2006).  "A decision of the ALJ will not be reversed for errors that are harmless."  *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (citations omitted).

### III.    Step Two Determination of Impairments

Mather contends the ALJ erred in finding she did not have severe impairments of depression and anxiety.  At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments.  If there is no finding of severe impairment, the Commissioner will find the claimant "not disabled" without continuing the remaining steps of the sequential process.  20 C.F.R. § 404.1520(a)(4)(ii); SSR 85-28.  Mather bears the burden of proving that her impairments are severe.  20 C.F.R.  § 404.1512; *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001).   The ALJ found Mather has a severe impairment of Fibromyalgia and noted she considered the combined effect of all Mather's impairments, severe and nonsevere, in the remaining

steps of the disability analysis.  Tr.  13-15,  20 C.F.R. § 404.1523.  The step two inquiry is a *de minimis* screening device to dispose of groundless claims, *Bowen v Yuckert,* 482 U.S. at 153-154. Once a severe impairment is found the analysis proceeds to step three.  The issue is whether the ALJ properly assessed, in her RFC determination, whether there were functional limitations from any impairment or combination of impairments that affected Mather's ability to work after April 11, 2005.

### IV.    RFC Determination

The ALJ determined Mather retained the RFC to perform light work with restrictions. Mather does not challenge the ALJ's finding that she is limited by her Fibromyalgia to light work, but asserts her mental impairments make her incapable of any level of work.

#### A.  Mental Impairments

The ALJ must resolve conflicts in the medical record.  *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  In resolving conflicts, the ALJ may draw reasonable inferences from the evidence.  *Gallant v. Heckler*, 753 F. 2d 1450, 1453 (9th Cir.1984).  The ALJ noted Mather had a long history of depression and social anxiety but responded well to medications.  Tr.  13.  She further noted that Mather had no psychiatric hospitalizations nor any regular treatment for depression and anxiety.  *Id.*  The ALJ cited the opinion of Dr. Nolan, who performed a consultative examination on June 17, 2006.  Tr.  12-13.  Dr.  Nolan noted her mood and affect were appropriate and that suspected sleep apnea may play a role in her depressive symptoms.  Tr.  238-240.  He found her capable of work with restrictions.  *Id.*

As noted above, the ALJ found Dr. Casey's note that Mather was disabled not credible as there was no explanation for this opinion and it was not consistent with his medical notes.  The note

is from 2003 and Mather worked full time until 2005, when Mather alleged the onset of disability. Even if the opinion was relevant to the alleged period of disability, the ALJ gave sufficient reasons for rejecting Dr. Casey's controverted opinion. Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001). "In addition, the regulations give more weight to opinions that are explained than to those that are not." *Id.* at 1202. The determination of whether a claimant meets the statutory definition of disability is the responsibility of the Commissioner. 20 C.F.R. § 404.1527(e). An ALJ can reject a treating physician's opinion that is controverted if he makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)(citations omitted). The ALJ did so.

The ALJ found Mather had mild limitations in activities of daily living with the ability to do some housework and crafts. Tr. 13-14. The ALJ also found only mild limitations in the area of social functioning, noting that there was no evidence of inappropriate social behavior or inability to respond in social situations. Tr. 14. In the functional area of concentration, persistence and pace, the ALJ found no limitations. *Id.* The ALJ also found no documented episodes of decompensation lasting for an extended period of time. *Id.* The record supports the ALJ's finding. If the evidence reasonably supports the ALJ's decision it must be upheld. *Matney v. Sullivan*, 981 F.2d at 1919.

## B. Credibility

Mather asserts the ALJ improperly assessed her credibility. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective

medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Mather has a medically determinable impairment which could produce her symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). When making a credibility evaluation, the ALJ may consider objective medical evidence, the claimant's treatment history, the effectiveness of medication and any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen v. Chater*, 80 F.3d at 1284, SSR 96-7p. The ALJ may also employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id.*

The ALJ found Mather's description of the limiting effects of her mental impairments inconsistent with the record. She noted there was a little evidence of treatment for her condition and no psychiatric hospitalizations. Tr. 15. The ALJ noted in discussing Mather's symptoms that medications adequately controlled them. Tr. 13. She further noted that Mather performed her past relevant work after the onset of her depression and anxiety. Tr. 16. The ALJ also found only mild limitations in Mather's ability to perform activities of daily living. She did find that Mather had restrictions due to her impairments, and incorporated these into her RFC.

The ALJ gave clear and convincing reasons for rejecting Mather's assertions regarding her inability to do her past relevant work. The ALJ's duty is to assess credibility and she did so based on substantial evidence in the record.

**<u>CONCLUSION</u>**

Based on the foregoing, the ALJ's decision that Mather does not suffer from a disability within the meaning of the Social Security Act is based on correct legal standards and supported by substantial evidence.    The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this _____9th_____ day of December, 2009.


 /s/ Garr M. King_____
Garr M. King
United States District Judge